UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALEXIS DUNLAP, individually and as the personal representative of the estate of MiChance Dunlap-Gittens, and FRANK GITTENS,<br><br>               Plaintiff,<br>   v.<br>KING COUNTY *et al.*,<br><br>               Defendants. | CASE NO. C19-1535-JCC<br><br>ORDER |

This matter comes before the Court on the parties' stipulated motion for entry of an order governing the discovery of electronically stored information ("ESI") (Dkt. No. 33). The Court hereby GRANTS the motion and ENTERS the following order:

**A.    General Principles**

    1.     An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

    2.     As provided in Local Civil Rule 26(f), the proportionality standard set forth in Federal Rule of Civil Procedure 26(b)(1) must be applied in each case when formulating a

discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

**B.     ESI Disclosures**

Within 30 days of entry of this order, or at a later time if agreed to by the parties, each party must disclose:

1.     Custodians. The initial ten custodians most likely to have discoverable ESI in their possession, custody, or control. The initial custodians must be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control.

2.     Non-custodial Data Sources. A list of non-custodial data sources (*e.g.*, shared drives, servers) likely to contain discoverable ESI.

3.     Third-Party Data Sources. A list of third-party data sources likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4.     Inaccessible Data. A list of data sources likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

**C.     ESI Discovery Procedures**

1.     On-site inspection of electronic media. On-site inspections are not required unless the requesting party demonstrates a specific need and good cause or the parties agree to an inspection.

2.     Search methodology.

a.     Within 30 days of entry of this order, (and subsequently within two weeks of any new discovery requests), the parties must confer to attempt to reach agreement on

appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies. To facilitate that conference, within 15 days of entry of this order, the parties must exchange proposed search terms, custodians, and any other relevant search methodology that each party anticipates will satisfy the outstanding discovery requests. The parties must continue to cooperate in revising the appropriateness of the search methodology. For requests made by Plaintiffs to Defendant King County, the parties presume that, unless the request explicitly identifies another agency or division within King County from which responsive documents are sought, searches will be limited to the King County Sheriff's Office. Searches run across individual custodians of the King County Sheriff's Office will include at minimum the following individuals: Joseph Eshom; Michael Garske; Christopher Johnson; Mitzi Johanknecht; Jonathan Reed Jones; Jose Marenco; Todd Miller; Cynthia Sampson; and John Urquhart. If, after such conference, the parties agree on a search methodology, execution of such methodology and production of non-privileged, responsive documents from such execution will satisfy the outstanding discovery requests.

  b. Assuming the parties are unable to agree on a search methodology for outstanding discovery requests, prior to running searches:

    i. The producing party must disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. The producing party may provide unique hit counts for each search query.

    ii. The requesting party is entitled to, within 14 days of the producing party's disclosure, add no more than 10 search terms or queries to those disclosed by the producing party absent a showing of good cause or agreement of the parties.

    iii. The following provisions apply to search terms / queries of the requesting party. Focused terms and queries must be employed; broad terms or queries, such as product and company names, generally should be avoided. A conjunctive combination of

multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and counts as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase counts as a separate search term unless they are variants of the same word. The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query. A search that returns more than 500 unique documents, excluding families, is presumed to be overbroad.

        c.      After production: Within 21 days of the producing party notifying the receiving party that it has substantially completed the production of documents responsive to a request, the responding party may request no more than 10 additional search terms or queries. The immediately preceding section (Section C(2)(a)(iii)) applies.

        d.      Nothing in this methodology limits a party's ability to review ESI for responsiveness or privilege prior to production.

     3.     <u>Format.</u>

        a.      ESI will be produced to the requesting party with searchable text, in a format to be decided between the parties. Acceptable formats include, but are not limited to, native files, multi-page TIFFs (with a companion OCR or extracted text file), single-page TIFFs (only with load files for e-discovery software that includes metadata fields identifying natural document breaks and includes companion OCR and/or extracted text files), and searchable PDF (only with load files for e-discovery software that includes metadata fields set forth below).

        b.      Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, and drawing files, must be produced in native format.

        c.      Each document image file must be named with a unique number (Bates Number). File names must not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the

underlying ESI, *i.e.*, the original formatting; the metadata (as noted below); and, where applicable, the revision history.

        d.      If a document is more than one page, the unitization of the document and any attachments and/or affixed notes must be maintained as they existed in the original document.

    4.     <u>De-duplication.</u> The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information removed during the de-duplication process tracked in a duplicate/other custodian field in the database load file.

    5.     <u>Email Threading.</u> The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. Upon reasonable request, the producing party must produce a less inclusive copy.

    6.     <u>Metadata fields.</u> If the requesting party seeks metadata, the parties agree that only the following metadata fields need be produced, and only to the extent it is reasonably accessible and non-privileged: document type; custodian and duplicate custodians (or storage location if no custodian); author/from; recipient/to, cc and bcc; title/subject; email subject; file name; file size; file extension; original file path; date and time created, sent, modified and/or received; and hash value. The list of metadata type is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

**D.**    **Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties are not required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties must preserve all discoverable ESI in their possession, custody, or control.

2. The parties must supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)–(2)).

3. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

    a. Deleted, slack, fragmented, or other data only accessible by forensics.

    b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

    c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

    d. Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

    e. Back-up data that are duplicative of data that are more accessible elsewhere.

    f. Server, system, or network logs.

    g. Data remaining from systems no longer in use that is unintelligible on the systems in use.

    h. Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud"

ORDER
C19-1535-JCC
PAGE - 6

storage).

**E.     Privilege**

    1.     A producing party must create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this order. Privilege logs must include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata provide insufficient information to evaluate the privilege claim asserted, the producing party must include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs will be produced to all other parties no later than 60 days after delivering a production, but no later than 30 days before the deadline for filing discovery motions.

    2.     Redactions need not be logged so long as the basis for the redaction is clear on the redacted document.

    3.     With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

    4.     Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Federal Rule of Civil Procedure 26(b)(3)(A) and (B).

    5.     The following do not need to be listed on a privilege log, regardless of timing:

    a. Any communications exclusively between a producing party and that party's outside counsel for purposes of this matter (including within the PAO), an agent of outside counsel other than the party, any non-testifying experts in connection with specific litigation, or with respect to information protected by Federal Rule of Civil Procedure 26(b)(4) testifying experts in connection with specific litigation.

b. Any privileged materials or work product created by or specifically at the direction of a party's outside counsel, an agent of outside counsel other than the party, any non-testifying experts in connection with specific litigation, or with respect to information protected by Federal Rule of Civil Procedure 26(b)(4) testifying experts in connection with specific litigation.

6. Pursuant to Federal Rule of Evidence 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. Information produced in discovery that is protected as privileged or work product must be immediately returned to the producing party, and its production shall not constitute a waiver of such protection.

DATED this 14th day of April 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE